## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                    No. CR 03-2566 JB

JASON STERLING,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant Jason Sterling's Motion to Suppress Items Seized During the Search of 138 South Avenue, Whitman, Massachusetts, filed February 6, 2006 (Doc. 23).  The Court held a hearing on this motion on April 13, 2006, and on April 26, 2006.  The primary issue is whether the Court should suppress the evidence seized from Sterling's residence pursuant to the February 18, 2000, search warrant.  Because the search warrant is deficient, because the affidavit is not incorporated into the search warrant, and because the good faith exception does not apply, the Court will grant the motion to suppress, and will suppress the items seized.

## <u>FINDINGS OF FACT</u>

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its essential findings on the record when deciding a motion that involves factual issues.  The findings of fact in this Memorandum Opinion and Order shall serve as the Court's essential findings for purposes of rule 12(d).  The Court makes these findings under the authority of rule 104(a) of the Federal Rules of Evidence, which requires a judge to decide preliminary questions relating to the admissibility of evidence, including the legality of a search or seizure and the voluntariness of an individual's

confession or consent to search.  See United States v. Merritt, 695 F.2d 1263, 1269 (10th Cir. 1982).

In deciding such preliminary questions, the other rules of evidence -- except those with respect to

privileges -- do not bind the Court.  See Fed. R. Evid. 1101(d)(1).  Thus, the Court may consider

hearsay in ruling on a motion to suppress.  See United States v. Merritt, 695 F.2d at 1269.

Neither party presented additional evidence at the two hearings on this motion.  See generally

Transcript of Hearing (taken April 13, 2006 and April 26 2006).  The Court will rely on the

documents attached to the Motion to Suppress -- the 2000 Massachusetts Search Warrant, the

Affidavit of Detective Sergeant Scott D. Benton, the Inventory of Items Seized During Search of 138

South Ave., (Rear) AKA Cottage, and the Memorandum of Decision and Order on Defendant's

Motion to Suppress Evidence, Commonwealth v. Jason A. Sterling, Ind. 103393-103401 (Super Ct.

of Plymouth Co., Mass. filed February 7, 2001) -- as well as the transcript of the February 6, 2001

hearing on Defendant's motion to suppress evidence in Commonwealth v. Jason A. Sterling, Nos.

PLCR2000-103393 to -401 (Super Ct. of Plymouth Co., Mass., February 6, 2001).  The parties also

represented to the Court at the April 13, 2006, hearing that it could rely on the factual circumstances

as set forth in the parties' briefs.  See Transcript of Hearing at 4:5-24 (taken April 13 2006).[1]

1.       On February 18, 2000, Sterling was found in the house of Tara Delmonico, a fourteen-

year old girl.  See Affidavit of Detective Sergeant Scott D. Benton (hereinafter "Benton Aff.") at 1

(signed and executed February 18, 2006).

2.       Sterling and Delmonico had a dating relationship before the February 18, 2000,

incident occurred.  See id. at 1-2.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

3.      When Delmonico's parents found out about the relationship, they had their daughter break it off.  See id. at 2.

4.      Delmonico's father, Ronald Delmonico, told Sterling to stay away from his daughter and to refrain from contacting her.  Sterling agreed that he would not have any more contact with Tara Delmonico.  See id.

5.      According to Benton's affidavit, Sterling continued to contact Tara Delmonico by telephone, friends, Internet, e-mail, pager, bus stop, and driving by Delmonico's home during the day and night.  See id.  This interaction culminated in Sterling allegedly forcing his way into Tara Delmonico's home on February 18, 2000.  See id.

6.      On February 18, 2000, at approximately 3:30 p.m., Sterling was arrested on a charge of breaking and entering.  See Motion to Suppress Items Seized During the Search of 138 South Avenue, Whitman, Massachusetts ("Motion to Suppress") at 2.

7.      Benton asserts in his affidavit that Sterling sent e-mail correspondence to Tara Delmonico and her friends that contain sexually graphic material and portray Sterling as being "mentally unstable."  Id.  Benton notes that Sterling has different e-mail addresses and that Sterling asserts in one of his e-mails that he is an expert on the Internet.  See id.

8.      Benton proceeded to execute an application for a search warrant upon Sterling's residence, which was a cottage in the rear of an apartment building located at 138 South Avenue, Whitman, Massachusetts.  See id.; 2000 Massachusetts Search Warrant (hereinafter "Search Warrant").

9.      The affidavit in support of the search warrant is a one and one-half page document, half of which is devoted to a recitation of the affiant's training.  See generally Benton Aff.

-3-

10.     The affidavit does not specify a crime which Sterling is suspected of committing, but does say that he had forced his way into the Delmonicos' house, was "stalking" Tara Delmonico, and had sent sexually graphic e-mails to Tara Delmonico and her friends.  Id. at 2.

11.     The affidavit does not cite any criminal statute that Sterling violated.  See generally id.

12.     The closest that the affidavit comes to alleging a crime is the statement that, on February 18, 2000, Sterling "forced his way into the Delmonico home due to his infatuation with Tara Delmonico," that Sterling was "stalking" Delmonico, and that he sent sexually graphic e-mails to Delmonico and her friends.  Id. at 1.

13.     There are no allegations in the affidavit that Sterling had engaged in sexual relations with Delmonico or attempted to solicit her in any manner through his e-mails.  See generally id.

14.     The affidavit does not state that Sterling violated any restraining order or engaged in any harassing contact about which Tara Delmonico had complained.  See id.

15.     Benton's affidavit describes property to be seized in a series of sentences at the end of the affidavit.  See id. at 2.

16.     The affidavit lists four categories of property to be seized.  See id.

17.     First, the affidavit requests "[a]ny information in printed form or computer-readable media dealing with the criminal activity described above/magnetic media."  Id.

18.     Second, the affidavit requests seizure of "[a]ny electronic media to include but not limited to computers, scanners, hand-held devices or any device that stores electronic data."  Id.

19.     Third, the affidavit requests the seizure of "[a]ll personal files to include but not limited to: e-mail, marked personal with name or 'my documents.'"  Id.

20.     Fourth, the affidavit seeks "[a]ny handwritten materials, photo's, and/or criminal activity that relates to the crimes described above." Id.

21.     The first and fourth descriptions refer only to "[t]he criminal activity described above." Id.

22.     The "criminal activity" is not specifically identified elsewhere in the affidavit. See id.

23.     The first sentence of the printed form for the warrant states:

Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find there is PROBABLE CAUSE to believe that the property described below:

* * * *

[I]s intended for or has been used as the means of committing a crime.

[H]as been concealed to prevent a crime from being discovered.

[I]s unlawfully possessed or concealed for an unlawful purpose.

[I]s evidence of a crime or evidence of criminal activity.

Search Warrant at 1.

24.     The "property described below" is not described in the search warrant. See id.

25.     The search warrant has two blanks, in which the issuing judicial officer is to insert information which defines the limits of the search. See id.

26.     The printed warrant states: "YOU ARE THEREFORE COMMANDED within a reasonable time and in no event later than seven days from the issuance of this search warrant to search for the following property." Id. (emphasis in original).

27.     After this command, the warrant provides the address and a brief description of the premises to be searched: "In Whitman, Massachusetts at 138 South Avenue: one story, wood frame

-5-

structure, in the rear standing free by itself, white in color.  Located in back of a three story wood frame apartment complex."  Id.

28.     The warrant does not, however, itemize the property or things to be seized.  See generally Search Warrant.

29.     The second paragraph directs the issuing officer to provide a description of the premises to be searched.  See id. at 1.

30.     There is a box to be checked, followed by the word "at:"  Id.  The box is checked, but there is no information provided in the blank.  See id.

31.     The one-page warrant does not provide an itemized list particularly describing the property or belongings that are the object of the search.  See generally Search Warrant.

32.     In the space reserved for a particularized description of the property to be seized or searched, there is no reference to the portion of the affidavit describing the property or even to the affidavit itself.  See id. at 1.

33.     There is no indication in the warrant that the affidavit is attached to the warrant.  See generally id.

34.     The warrant does not cite any criminal statute.  See id.

35.     In addition, the warrant authorized officers to conduct the search at any time during the night.  See id.

36.     The search warrant was issued on February 18, 2000, at 8:15 p.m.  See id.

37.     Massachusetts law requires that the judicial officer "issuing the warrant shall retain the affidavit and shall deliver it within three days after the issuance of the warrant to the court to which the warrant is returnable.  Upon return of such warrant, the affidavit shall be attached to it and

it shall be filed therewith . . . ."  Mass. Ann. Law ch. 276, § 2B (2005).

38.     At approximately 9:41 p.m. on February 18, 2000, officers, including Benton, executed the search warrant on Sterling's residence located at 138 South Avenue, Whitman, Massachusetts.  See Motion to Suppress at 1; Response to Defendant's Motion to Suppress, Filed February 6, 2006 (Doc. 23)("Response") at 7, filed February 27, 2006 (Doc. 28); Defendant's Reply to the Government's Response to the Defendant's Motion to Suppress at 4, filed March 15, 2006 (Doc. 39).

39.     At the time of the issuance and the execution of the search warrant, Sterling was in jail in the custody of the Whitman Police Department.  See id. at 1-2, 10-11.

40.     Sterling was not served with the warrant or the supporting affidavit at the time of the warrant's execution.  See id. at 6.

41.     Sterling's landlord, Robert Dennis, opened Sterling's residence and allowed the police into Sterling's home.  See id. at 6, 11.

42.     Officers seized approximately 32 items, including a Hewlett Packard computer, the computer's hard drive, and numerous computer files and floppy disks.  See Inventory of Items Seized During Search of 138 South Ave., (Rear) AKA Cottage ("Inventory") at 1.

43.     The officers also seized a pellet rifle, a pair of furry cuffs, four teeth, and a Christmas ornament.  See id.

44.     As a result of the Whitman Police Department investigation, Sterling was charged in Massachusetts state court with rape of a child.  See Motion to Suppress at 3.

45.     Sterling filed a motion in state court to suppress the fruits of the warrant executed on 138 South Avenue.  See id.

46.     The motion did not raise a particularity challenge.  See generally Memorandum of Decision and Order on Defendant's Motion to Suppress Evidence, Commonwealth v. Jason A. Sterling, Ind. 103393-103401 ("Memorandum of Decision") (Super Ct. of Plymouth Co., Mass. filed February 7, 2001).

47.     The motion was denied.  See id. at 1-2.

48.     The Massachusetts trial court's Memorandum of Decision and Order on Defendant's Motion to Suppress Evidence suggests that the "application form and the attached supporting affidavit are both subscribed under oath by the affiant.  They must be considered as one sworn application." Id. at 1.

49.     The Massachusetts trial court's opinion does not say anything about the affidavit being attached to the warrant when the search warrant was executed.  See generally id.

50.     Sterling ultimately pled guilty in the Superior Court of Plymouth County, Massachusetts to ten counts of rape of a child, a single count of possession of child pornography, a count of dissemination of harmful material to a minor, and one count of violation of a protective order.  See Motion to Suppress at 3-4.

51.     Sterling did not reserve the state suppression issue for appeal.  See id. at 4.

52.     Sterling received concurrent sentences of between four and five years in prison.  See id.

53.     Officers reviewed the computer files seized from Sterling's home.  See id.

54.     The Massachusetts Department of State Police report reveals:

> After extensive investigation on the Whitman case, evidence of additional potential victims was discovered during a search warrant of the defendant's premises.  Many of the names discovered during this

> search were young females who lived in numerous states across the country.  At this time, ADA Beckerman requested the assistance of this officer to contact each potential victim and obtain official police statements from each one . . . .

See id. (citing Discovery at 100188).

55.    One of those contacts was with the Jane Doe who is the subject of the federal indictment in the United States District Court for the District of New Mexico.  See id.

56.    Massachusetts State Trooper Diane Lilly contacted Detective Anthony Maes of the Albuquerque Police Department on June 25, 2001, and advised him of the circumstances involving Jane Doe.  See id.

57.    Lilly advised Maes that Jane Doe may have been involved "to some extent" with Sterling.  Id. (citing Discovery at 100189).

58.    Lilly then asked Maes to conduct an in-person interview of Jane Doe to determine what contact she had with Sterling, and what the nature and extent of that contact might have been. See id.

59.    Maes interviewed Doe.  See id.  During the interview, Jane Doe alleged that Sterling traveled from Massachusetts to visit her in Albuquerque, New Mexico where he had "forced sexual intercourse" with her at the Double Tree Hotel.  Id.

60.    As a result of this information, Maes collected rental car contracts and hotel registrations for July 14 through July 15 of 1998 in the name of Jason Sterling.  See id.

61.    The investigation in Albuquerque was a direct result of the seizures of computer records from 138 South Avenue.  See id. at 4-5.

62.    There was no limitation on the scope of the search within the search warrant itself, and

the officers seized several items that exceeded the scope of the items listed in the affidavit; the officers seized a pellet rifle, 1 pair of furry cuffs, 4 teeth in an envelope, and a Christmas tree ornament.  See Inventory at 1.

63.     The facial deficiency of the search warrant combined with the fact that the officers seized several items that were not covered in either the warrant or affidavit shows that the officers could not have reasonably presumed the warrant to be valid.

## PROCEDURAL BACKGROUND

Sterling seeks to suppress all of the items seized during the search of 138 South Avenue, together with any fruits of that seizure, including but not limited to the testimony of Jane Doe or any information gleaned from interviews with Jane Doe.  See Motion to Suppress at 2.

## FOURTH AMENDMENT LAW

The Fourth Amendment states: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  General warrants are at the heart of the Fourth Amendment's prohibition.  Those searches that are "deemed necessary should be as limited as possible.  Here the specific evil is the 'general warrant' abhorred by the colonists . . . ."  Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).  See United States v. Leary, 846 F.2d 592, 600 (10th Cir. 1988)("This [particularity] requirement prevents a general exploratory rummaging in a person's belongings . . . .")(citation and internal quotations omitted).

When a search warrant is issued and executed under state law, the warrant and affidavit must conform to federal constitutional requirements for the evidence to be admissible in a federal prosecution.  See United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir. 2004)(citing United States

v. Green, 178 F.3d 1099, 1105 (10th Cir. 1999), United States v. Le, 173 F.3d 1258, 1264 (10th Cir.

1999), and United States v. Callwood, 66 F.3d 1110, 1112 (10th Cir. 1995)).

     1.     **Particularized Description.**

     To prevent law enforcement from a "general exploratory rummaging of a person's

belongings," a warrant must give a "particularized description" of the objects to be seized.  United

States v. Leary, 846 F.2d at 600 (citations and internal quotations omitted).  "'The particularity

requirement also ensures that a search is confined in scope to particularly described evidence relating

to a specific crime for which there is demonstrated probable cause.'"  Id. (quoting Voss v.

Bergsgaard, 774 F.2d 402, 404 (10th Cir. 1985)).

     The United States Court of Appeals for the Tenth Circuit articulated the constitutional

imperative of the particularity requirement in United States v. Janus Indus., 48 F.3d 1548 (10th Cir.

1995):

> The Fourth Amendment's requirement that a warrant particularly describe the things
> to be seized prevents a general, exculpatory rummaging in a person's belongings and
> makes general searches . . . impossible and prevents the seizure of one thing under a
> warrant describing another. As to what is to be taken, nothing is left to the discretion
> of the officer executing the warrant.  The particularity requirement also ensures that
> a search is confined in scope to particularly described evidence relating to a specific
> crime for which there is demonstrated probable cause.

Id. at 1553-1554 (citations and internal quotations omitted).  "The test applied to the description of

the items to be seized is a practical one.  A description is sufficiently particular when it enables the

searcher to reasonably ascertain and identify the things authorized to be seized." Id. at 1554 (citation

and internal quotations omitted).

     The United States Supreme Court recently addressed, in Groh v. Ramirez, 540 U.S. 551

(2004), the validity of a search warrant that failed to identify any of the items that the officer intended

to seize.  See id. at 554.  The respondents brought the lawsuit under Bivens v. Six Unknown Fed.

Narcotics Agents, 403 U.S. 388 (1971), raising eight claims, including a Fourth Amendment

violation.  See id. at 555.  The search warrant in Groh v. Ramirez, failed to identify any of the items

that the officer intended to seize; rather, in the space on the form that called for a description of the

person and property to be seized, the officer typed a description of the respondents' two-story blue

house and did not include the items to be seized.  See id. at 554.  The affidavit, on the other hand,

"particularly described the place to be searched and the contraband [the officer] expected to find."

Id.

        The Supreme Court in Groh v. Ramirez, found in relevant part: (i) "[t]he warrant was plainly

invalid"; (ii) "[t]he fact that the *application* adequately described the 'things to be seized' does not

save the *warrant* from its facial invalidity," because "[t]he Fourth Amendment by its terms requires

particularity in the warrant, not in the supporting documents," and the incorporation doctrine did not

apply because the "warrant did not incorporate other documents by reference, nor did either the

affidavit or the application . . . accompany the warrant"; (iii) that "the Magistrate authorized the

search on the basis of adequate evidence of probable cause, that [the officer] orally described to

respondents the items to be seized, and that the search did not exceed the limits intended by the

Magistrate and described by [the officer]," did not make the "search reasonable within the meaning

of the Fourth Amendment," because the warrant did not "describe the items to be seized *at all*," and

thus "the warrant was so obviously deficient that [the court] must regard the search as 'warrantless.'

. . ."; (iv) that "even if the Magistrate was aware of the deficiency," it would not have been

"reasonable for [the officer] to rely on a warrant that was so patently defective"; and (v) the officer

was not entitled to qualified immunity because "no reasonable officer could believe that a warrant that

-12-

plainly did not comply with [the Constitution's particularity] requirement was valid." Id. at 557-558, 561, 563 (emphasis in original).

### 2.      **Incorporation Doctrine.**

"[T]he particularity of an affidavit may cure an overbroad warrant, but only where the affidavit and the search warrant . . . can be reasonably said to constitute one document." United States v. Leary, 846 F.2d at 603 (citation and internal quotations omitted).  The search warrant and the affidavit "must be physically connected," and "the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference." Id. (citations and internal quotations omitted).  "Even if the technical requirements for incorporation [are] met, it [is] improper to allow the affidavit to cure the lack of particularity in the warrant where the government agents [rely] on the breadth of the warrant, not the specificity of the affidavit, to define the scope of the search." Id. at 604 (citation omitted).

In United States v. Maxwell, 920 F.2d 1028 (D.C. Cir. 1990), the United States Court of Appeals for the District of Columbia Circuit examined a warrant that "contained no description of the premises to be searched or the items to be seized, but did expressly incorporate a description of the premises that was attached to the application for the search warrant, as well as a one-paragraph description of the categories of items to be seized that was also attached to the application." Id. at 1031.  There were blanks in the boilerplate warrant for a description of the items to be seized.  The magistrate accomplished incorporation "[b]y typing, in the places provided on the warrant for describing the premises to be searched and the items to be seized, 'Attachment #1 and Attachment #2' respectively, thereby referencing the first two attachments to the search warrant application filed with the magistrate." Id. at 1031 n.1.

-13-

The warrant in <u>United States v. Maxwell</u>, did not, however, expressly incorporate the affidavit, which provided details of the criminal activity in which the defendant was suspected of engaging.  See <u>id.</u> at 1031-32.  The search warrant stated, "in preprinted language, that the agent presented an affidavit to the issuing magistrate and that the magistrate 'was satisfied that the affidavit(s) . . . establish probable cause' justifying issuance of a warrant . . . ."  <u>Id.</u> at 1032.  There were, however, "no explicit words on the warrant indicating that the magistrate intended to incorporate the contents of the affidavit into the warrant and thereby limit its scope by reference to the affidavit, nor did either of the two attachments that were explicitly incorporated into the warrant make reference to the affidavit."  <u>Id.</u>

The D.C. Circuit in <u>United States v. Maxwell</u> stated: "Although there is little case law specifically addressing what suffices to incorporate an affidavit into a warrant by reference, we believe that something more is required than a boilerplate statement that the affidavit or affidavits presented to the magistrate constitute probable cause for issuing the warrant."  <u>Id.</u>  The D.C. Circuit concluded: "[I]n order for an affidavit to be viewed as limiting the scope of a warrant, the warrant must not only attach the affidavit, but must also contain 'suitable words of reference' evidencing the magistrate's explicit intention to incorporate the affidavit."  <u>Id.</u>

      **3.**      <u>**Good-Faith Exception to the Exclusionary Rule.**</u>

"Ordinarily, courts will remedy a Fourth Amendment violation by invoking the exclusionary rule to exclude the Government's introduction of the unlawfully seized evidence as direct evidence against the defendant in a criminal prosecution."  <u>United States v. Herrera</u>, No. 05-3057, 2006 U.S. App. LEXIS 9830, at *25-26 (10th Cir. April 19, 2006)(citations omitted).  The exclusionary rule "is not a personal constitutional right of the party aggrieved," but rather is a "judicially created

remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." Id. at *26 (quoting United States v. Leon, 468 U.S. 897, 906 (1984)).

Because the "exclusionary rule is harsh, requiring the exclusion of potentially reliable evidence of wrongdoing," it "should be invoked only when doing so furthers the purpose of that rule, which is 'designed to deter police misconduct.'" Id. (quoting United States v. Leon, 468 U.S. at 916). "[I]f an officer in a given case obtained evidence in violation of the Fourth Amendment, it [makes] no sense to exclude that evidence if the officer was nevertheless acting in an objectively reasonable manner when he seized the evidence." Id. at *26-27 (citation omitted). "[T]he Supreme Court [has] adopted a good-faith exception to the application of the exclusionary rule," which applies "where an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, even though the search warrant was later deemed to be invalid." Id. at *27 (citation and internal quotations omitted).  While United States v. Leon applied the good-faith exception to the exclusionary rule where a search warrant was unsupported by sufficient probable cause, see United States v. Leon, 468 U.S. at 900, 926, the Supreme Court in Massachusetts v. Sheppard, 468 U.S. 981 (1984), held that the same good-faith exception that it recognized in United States v. Leon also applied to warrants that violate the Fourth Amendment's particularity requirement because of a technical error, see Massachusetts v. Sheppard, 468 U.S. at 983-984, 988-991.

The Supreme Court in United States v. Leon recognized four situations where the good faith exception does not apply:

> (1) if the judge issuing the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) where the issuing judge "wholly abandoned his judicial role"; (3) where the underlying affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the

> warrant was "so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid."

United States v. Martinez-Martinez, 25 Fed. Appx. 733, 736 (10th Cir. 2001)(quoting United States v. Leon, 468 U.S. at 923). "[T]he government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." United States v. Leary, 846 F.2d at 607 (citation and internal quotations omitted).

**4.    Probable Cause.**

Search warrants must be based upon a showing of probable cause. See U.S. Const. amend. IV. "Before a court can issue a search warrant, 'the judicial officer issuing such a warrant must be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant.'" United States v. Beck, 139 Fed. Appx. 950, 954 (10th Cir. 2005)(quoting Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 564 (1971)). To determine whether probable cause exists to issue a warrant, "the issuing judge must decide whether, given the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006)(quoting United States v. Simpson, 152 F.3d 1241, 1246 (10th Cir. 1998)). Courts are to interpret search warrant affidavits in a "common sense and realistic fashion." Id. (citation omitted). "The issuing judge is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts." Id. (citing United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998)).

"A search warrant must be supported by probable cause, requiring 'more than mere suspicion but less evidence than is necessary to convict.'" United States v. Dunhauer, 229 F.3d 1002, 1005-06

(10th Cir. 2000)(quoting <u>United States v. Burns</u>, 624 F.2d 95, 99 (10th Cir. 1980)).  Probable cause requires "a nexus between suspected criminal activity and the place to be searched."  <u>Id.</u> at 1006 (citation and internal quotations omitted).

<u>ANALYSIS</u>

Sterling contends that the warrant was constitutionally defective in two respects.  Sterling first contends that the warrant was overbroad; it fails to describe with particularity the items to be seized.  Second, Sterling argues that the warrant was issued without a showing of probable cause that 138 South Avenue housed the evidence of criminal activity or that the computer and computer files were evidence of criminal activity.  Sterling seeks to suppress the items seized from his home, together with all fruits and instrumentalities of that seizure.

**I.    THE WARRANT WAS FACIALLY UNCONSTITUTIONAL BECAUSE IT DID NOT IDENTIFY AT ALL THE ITEMS TO BE SEIZED.**

The warrant does not comply with the Fourth Amendment.  First, the search warrant that forms the basis for the seizure of the items from Sterling's home did not identify in any manner the things to be seized.  In the space provided for a description of the items to be seized, the warrant describes Sterling's residence.  The warrant does not provide any description of the items to be seized.  The warrant's lack of particularity here is constitutionally indistinguishable from the lack of particularity in <u>Groh v. Ramirez</u>, where the Supreme Court stated that the "warrant was plainly invalid."  <u>Groh v. Ramirez</u>, 540 U.S. at 557.  In <u>Groh v. Ramirez</u>, the space that provided for a description of the items to be seized instead contained a description of the property to be searched, just as this search warrant did.  <u>See id.</u> at 554.  And just like this search warrant, the warrant in <u>Groh v. Ramirez</u> did not describe or list the items to be seized anywhere on the warrant.  <u>See id.</u>  The

search warrant before the Court, like the warrant in Groh v. Ramirez, is "plainly invalid."  Id. at 557.[2]

Second, the incorporation doctrine does not cure the warrant's deficiencies.  An affidavit must be physically attached to the warrant, and the search warrant must expressly refer to the affidavit and incorporate it into the search warrant with suitable words of reference.  See United States v. Leary, 846 F.2d at 603.  The United States has not presented any evidence that the search warrant was attached to the affidavit, and it concedes that, because it cannot show otherwise, the Court should operate under the assumption that it was not attached.  See Transcript of Hearing at 6:1-5. Moreover, Massachusetts law would indicate that, if the state court was acting in accordance with state law, the affidavit was not attached to the search warrant when it was executed.  See Mass. Ann. Law ch. 276, § 2B (2005)("The person issuing the warrant shall retain the affidavit and shall deliver it within three days after the issuance of the warrant to the court to which the warrant is returnable. Upon return of such warrant, the affidavit shall be attached to it and it shall be filed therewith . . . .").  Because there is no evidence that the affidavit was physically attached to the search warrant, it is not incorporated into such warrant.[3]  Finally, because the search warrant is facially invalid, and cannot be cured by incorporation of the affidavit, the Court finds that the warrant is unconstitutional.

---

[2] The United States conceded at the April 26, 2006 hearing, that this warrant, standing alone, is invalid.  See Transcript of Hearing at 8:8-10 (taken April 26, 2006).

[3] Because the affidavit was not physically attached to the search warrant, thus precluding the doctrine of incorporation, the Court need not determine whether the boiler-plate language of incorporation is sufficient language of reference to incorporate the affidavit into the search warrant. Indeed, the United States agreed at the hearing that the presumption is that the affidavit was not physically attached, and that the affidavit therefore could not cure the warrant.  See Transcript of Hearing at 8:23-9:6.  The United States asserted that the issue before the Court was whether, despite the warrant's unconstitutionality, the circumstances surrounding the search warrant showed the officer's reasonably objective good faith in executing it.  See id. at 9:9-15.

## II.   THE OFFICER DID NOT REASONABLY RELY ON THE WARRANT IN OBJECTIVE GOOD FAITH.

The Court's finding that the warrant is invalid does not end its inquiry.  The Court must next determine whether the good-faith exception applies.  See United States v. Leary, 846 F.2d at 606. "In determining whether the exception should be applied, the 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"  Id. at 607 (quoting United States v. Leon, 468 U.S. at 922 n.23).  The Court must look at all of the circumstances and the text of the warrant itself, and assume that the officers have a reasonable knowledge of what the law prohibits. See id.

The Court finds that the warrant "was so patently defective" that it was not "reasonable for [the officer] to rely on [it]."  Groh v. Ramirez, 540 U.S. at 561.  First, this warrant appears to the Court to be the quintessential example of what the Supreme Court in United States v. Leon referred to as "so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid."  United States v. Leon, 468 U.S. at 923.  The Supreme Court's recent decision in Groh v. Ramirez -- which found the warrant "plainly invalid" -- supports the Court's conclusion.  Like Groh v. Ramirez, this case also does not present a situation where a warrant inaccurately describes the items to be seized, or where the description of the items is overbroad; this warrant "did not describe the items to be seized *at all*." Groh v. Ramirez, 540 U.S. at 558 ("This warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items.  Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. . . .  In other words, the warrant did

-19-

not describe the items to be seized *at all*.")(emphasis in original).

The factual circumstances here are not constitutionally distinguishable from those in Groh v. Ramirez.  There, the warrant did not give any description of the items to be seized and the affidavit was not incorporated into the warrant.  The Court in Groh v. Ramirez stated that the "warrant was so obviously deficient that [the Court] must regard the search as warrantless within the meaning of [the] case law." Id. at 559.  The Supreme Court in Groh v. Ramirez also distinguished Massachusetts v. Sheppard, 468 U.S. 981, where the Supreme Court held that "it was not unreasonable for the police [] to rely on the judge's assurances that the warrant authorized the search they had requested." Groh v. Ramirez, 540 U.S. at 561 n.4 (quoting Massachusetts v. Sheppard, 468 U.S. at 990)).  The Supreme Court in Groh v. Ramirez stated:

> In this case, by contrast, petitioner did not alert the Magistrate to the defect in the warrant that petitioner had drafted, and we therefore cannot know whether the Magistrate was aware of the scope of the search he was authorizing. Nor would it have been reasonable for petitioner to rely on a warrant that was so patently defective, even if the Magistrate was aware of the deficiency.

Id. (citation omitted).  Similarly here, there is no evidence before the Court that the executing officers alerted the Magistrate to the defect.

Finally, the Supreme Court in Groh v. Ramirez stated that "even a cursory reading of the warrant in this case -- perhaps just a simple glance -- would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal."  Id. at 564.  The Court realizes that the issue of reasonableness decided in Groh v. Ramirez was not reasonableness in the context of the good-faith exception to the exclusionary rule, whereas the issue here is.  Although the context here is different than that in Groh v. Ramirez, the reasoning and definitive language in Groh v. Ramirez compel this Court to find that the officer here did not have a reasonably objective good-

faith belief that the warrant was valid.  First, the Supreme Court in Groh v. Ramirez addressed "good

faith" cases when discussing reasonableness.  For example, when the Supreme Court stated that "it

[would not have been] reasonable for petitioner to rely on a warrant that was so patently defective,

even if the Magistrate was aware of the deficiency," it cited United States v. Leon for that

proposition.  Groh v. Ramirez, 540 U.S. at 561.  Also, in its reasonableness analysis, the Supreme

Court distinguished Massachusetts v. Sheppard.  See id.

Also, that the affidavit included a description of the items to be seized and that the officer

executing the warrant was the affiant who had prepared the affidavit does not establish objectively

reasonable good faith in the execution of this warrant.  First, the Tenth Circuit in United States v.

Leary noted that the good-faith exception is not available when the scope of the search itself is

broader than that allowed by the warrant:

> In addition, application of the "good faith" exception assumes "that the officers
> properly executed the warrant and searched only those places and for those objects
> that it was reasonable to believe were covered by the warrant."  Leon, 468 U.S. at
> 918 n.19. . . .  See United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988)
> ("When . . . officers grossly exceed the scope of a search warrant in seizing property,
> the particularity requirement is undermined and a valid warrant is transformed into a
> general warrant thereby requiring suppression of all evidence seized under that
> warrant.").

United States v. Leary, 846 F.2d at 607 n.27.  In Leary, the officers exceeded the scope of both the

search warrant and the affidavit, and the Tenth Circuit found "the warrant so facially deficient in its

description of the items to be seized that the executing officers could not reasonably rely on it.  That

conclusion is reinforced by the government's conduct and the circumstances of the search."  Id. at

609-610.

Here the facial deficiency of the search warrant combined with the fact that the officers seized

several items that were not covered in the affidavit supports the Court's conclusion that the officers could not have reasonably presumed the warrant to be valid.  There was no limitation on the scope of the search within the search warrant itself, and the officers seized several items that exceeded the scope of the items listed in the affidavit; the officers seized a pellet rifle, 1 pair of furry cuffs,  4 teeth in an envelope, and a Christmas tree ornament.  See Inventory at 1.  The United States cannot argue that the affidavit shows reasonable good faith on the part of the officers, and that they could reasonably presume it to be valid, in light of the fact that one of the executing officers was the affiant, because the officers clearly went beyond the scope of even the affidavit the affiant drafted in their search and seizure.  Even if the affidavit had been incorporated correctly, had the officers relied upon it, this affidavit did not effectively limit the scope of the search, nor did it stop the search from being a general search rather than a particularized search.  See United States v. Leary, 846 F.2d at 603-604 ("Finally, and perhaps most importantly, the search itself was not limited by the affidavit. . . .  Even if the technical requirements for incorporation were met, it would be improper to allow the affidavit to cure the lack of particularity in the warrant where the government agents relied on the breadth of the warrant, not the specificity of the affidavit, to define the scope of the search.").

The cases upon which the United States relies -- United States v. Simpson, 152 F.3d 1241 (10th Cir. 1998), and United States v. Riccardi, 405 F.3d 852 (10th Cir. 2005), cert. denied, 126 S. Ct. 299 (2005) -- are distinguishable.  In United States v. Simpson, the defendant argued that the warrant did not authorize a search of his home, but only of his person.  See 152 F.3d at 1247.  The warrant stated that the property to be seized "is located at, and is now being kept, possessed and on the person of the above named defendant, in Tulsa County, Oklahoma, described as follows: . . . ." Id.  Thereafter, the warrant contained a detailed description of Simpson's house.  The warrant then

stated:

> The affidavits being positive that the described property is on the person of the above named defendant and there being a likelihood that said property is of important probative value.

> YOU ARE THEREFORE COMMANDED . . . to make search of said person, for the described property, and if found to seize the same . . . .

Id. at 1247-48.  The defendant contended that the warrant authorized only a search as to his person and did not authorize a search of his property.  See id. at 1248.  The Tenth Circuit held that, although the warrant could have been clearer, the warrant "sufficiently described the places to be searched and included therein Simpson's residence."  Id.  Although the Tenth Circuit in Simpson noted that the unincorporated affidavit produced by the same officer who executed the search warrant showed that the executing officer believed in good faith that he was obtaining a warrant to search Simpson's residence, see id., Simpson is distinguishable.  First, here there is no description in the warrant of the items to be seized "at all," whereas, in Simpson, the warrant itself contained a detailed description of the house to be searched.  The Simpson warrant therefore was not as plainly deficient as the warrant before the Court and as the warrant in Groh v. Ramirez.  Second, the Tenth Circuit held that the warrant itself was valid and it therefore did not need to rely on the good-faith exception.  See id.  Third, there is no evidence in Simpson that the officers executing the warrant went beyond either the scope of the warrant or the scope of the affidavit.  See generally id.  This case is more analogous to United States v. Leary, where the officers went beyond both the scope of the search warrant and the scope of the affidavit in executing the search warrant.

This case is also distinguishable from United States v. Riccardi, where the Tenth Circuit held that, although the warrant failed to meet the Constitution's particularity requirement, the Leon good-

faith exception applied, and the Tenth Circuit affirmed the district court's denial of the motion to suppress the evidence.  See United States v. Riccardi, 405 F.3d at 863-864.  First, in Riccardi, there was some description of the items to be seized: "The warrant [authorized] the 'seizure' of Mr. Riccardi's computer and the search of 'all electronic and magnetic media stored within such devices.'"  Id. at 858.  The warrant in Riccardi did not, however, specify the nature of the materials the officers should examine.  See id.  Again, the warrant before the Court does not describe the items to be seized "*at all*."

Second, the Tenth Circuit in United States v. Riccardi relied on the following to support the Leon good-faith exception: (i) the unincorporated affidavit limited the search to child pornography; (ii) the officers investigating the warrant were "involved  in the investigation throughout, and one of the executing officers actually wrote the affidavit"; (iii) one of the officers actually stopped to ask if the warrant was sufficient and received assurances from a detective who had consulted with a prosecutor that the warrant was sufficient; (iv) the search methodology was limited to finding child pornography; and (v) the seizures did not exceed those that were relevant to the crimes identified in the affidavit.  Id. at 864.

Here, there is no evidence that the officers stopped and consulted to make sure that the warrant was sufficient, nor that they called a prosecutor to find out if the warrant was sufficient.  Whereas the officers in Riccardi "remained within the terms of the warrant as well as the affidavit, and did not conduct a 'fishing expedition' beyond the scope of the authorized investigation," id., the officers here went beyond the scope of the affidavit -- the furry cuffs, the pellet gun, the Christmas ornament, and the 4 teeth -- and engaged in somewhat of a fishing expedition.

The Tenth Circuit in Riccardi also stated "[n]or do we think the defect in the warrant was so

flagrant or obvious that 'the executing officers could not reasonably presume it to be valid.'"   Id. (quoting United States v. Leon, 468 U.S. at 923).   Here, the defect in the warrant was so "obvious that the executing officers could not reasonably presume it to be valid."

Finally, Sterling contends that the evidence revealed through the investigation of Albuquerque Police Detective Maes and his interview with Jane Doe are the fruits of the February 18, 2000 search of Sterling's residence in Whitman, Massachusetts.   See Motion to Dismiss at 5.   The United States does not contend that the primary taint has been sufficiently purged in accord with Wong Sun v. United States, 371 U.S. 471, 487-88 (1963), where the United States Supreme Court stated:

> We need not hold that all evidence  is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police.   Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

Indeed, the United States affirms that the identity of the victim in the present prosecution was identified from the computer that was illegally seized on February 18, 2000.   See Response at 8.

Because the Court finds that this search warrant is invalid and that the officers that executed it could not reasonably presume it to be valid, the Court will suppress the items seized as a result of the February 18, 2000, search, and the Court will suppress any evidence obtained as a direct result of the February 18, 2000 search.   The Court will therefore suppress any evidence obtained as a result of the February 18, 2000, search that has not been sufficiently purged of the primary taint of the illegal search.[4]

---

[4] Because the Court finds that the search warrant is invalid, and that the good-faith exception does not apply, the Court need not address the issue whether there is sufficient information in the affidavit to establish probable cause.   See United States v. Leary, 846 F.2d at 607 n.26 (declining to address the issue of probable cause after finding that the Constitution's particularity requirement was

**IT IS ORDERED** that the Defendant Jason Sterling's Motion to Suppress Items Seized

During the Search of 138 South Avenue, Whitman, Massachusetts is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
   United States Attorney for the
      District of New Mexico
Robert D. Kimball
   Assistant United States Attorney
      for the District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Richard A. Winterbottom
   Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

     *Attorneys for the Defendant*

---

not met).  Even if the Court found that the officers could reasonably presume that probable cause supported the warrant, they could not, as the Court has already discussed, reasonably presume that the warrant met the Constitution's particularity requirement.